IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| A.A.B JOINT VENTURE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-1172C |
| | ) | (Chief Judge Damich) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**JOINT PRELIMINARY STATUS REPORT**

The parties, having met on February 22, 2006, respectfully submit the following Joint Preliminary Status Report. Pursuant to Section III, Appendix A of the Rules of the United States Court of Federal Claims. (The Court has not entered a Special Procedures Order in this case.)

a. Jurisdiction: Plaintiff, A.A.B Joint Venture ("AAB"), invokes the Court's jurisdiction based upon 41 U.S.C. § 609(a)(1), which provides that AAB may bring in an action directly on its claim in this Court notwithstanding any contract provision, regulation, or rule of law to the contrary.

By letter dated September 22, 2005 the Contracting Officer issued a final decision denying the claim in its entirety, allowing commencement of this action under the Contract Disputes Act.

This Court also has jurisdiction based upon 28 U.S.C. § 1491(a)(1) which provides that the United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded upon any express or implied contract with the United States. Jurisdiction is proper under this section since the monetary relief requested is specifically allowed for by the remedy-granting clause of the underlying contract. *Cottrell v. United States*, 42 Fed. Cl. 144 (1998).

Defendant believes that the Court lacks jurisdiction to entertain AAB's claim concerning the Government's alleged attempts to require M-20 bolts (alleged in paragraphs 46 through 54 of the amended complaint), upon the ground that AAB did not submit a certified claim or requested a Contracting Officer's final decision with respect to this claim.

b. Consolidation: Plaintiff does not believe that this case should be consolidated with any of the other current matters pertaining to AAB which are presently pending before this Court. Defendant believes that this case should be consolidated with Nos. 04-1719C, 05-114C, and 06-49C, for the reasons stated in defendant's pending motion to consolidate these cases.

c. Bifurcation: The parties do not believe that bifurcation is necessary at this time.

d. Deferral: The parties do not believe that further proceedings in this action should be deferred pending consideration of any other case before this Court, or any other tribunal. The parties do not believe that there is any basis for transferring or remanding the case to another tribunal. The parties are not aware of any related cases in any other tribunal.

e. Remand/Suspension: The parties do not intend to request a remand or a suspension in this case.

f. Additional Parties: The parties do not anticipate joining any additional parties to this lawsuit.

g. Dispositive Motions: At this time the parties do not contemplate filing a dispositive motion, but they reserve the right to do so after the close of fact discovery.

h. Relevant, Factual and Legal Issues: Plaintiff states that the relevant, factual and legal issues are as follows:

1. Whether the pressure test requirement set forth in Division 2, Section 003, Dry Storage Buildings, Chapter J, Paragraph 3, required air tightness which far exceeded the air tightness and vapor proofing standards for the applicable building structures.

2. Whether the combination of the contractually mandated exterior panel cladding (on the outside of the structural steel) and the specified requirement for air tightness set forth in 1 above resulted in a defective specification.

3. Whether the combination of the contractually mandated external panel cladding (on the outside of the structural steel) and the specified air tightness requirement breached the Government's implied warranty that if the specifications were followed the specified result would be obtained.

4. Whether, assuming such a breach of implied warranty or defective specification occurred, AAB was required to perform additional work beyond that required by the contract, entitling it to an equitable adjustment pursuant to FAR 52.243-4 entitled "Changes" for all additional costs, impacts and delays incurred as a result thereof.

5. Assuming the Government is liable under the Changes clause, what is the monetary value of the equitable adjustment to which plaintiff is entitled?

6. Whether, if considered to be a performance specification, the pressure test requirement when considered with the other relevant specifications was either impossible or rendered performance commercially impracticable.

7. Whether, assuming the specifications were either impossible or commercially impracticable, AAB was required to perform additional work beyond that required by the contract, entitling it to an equitable adjustment pursuant to FAR 52.243-4 entitled "Changes" for all additional costs, impacts and delays incurred as a result thereof.

8. Assuming the Government is liable under the Changes clause, what is the monetary value of the equitable adjustment to which plaintiff is entitled?

9. Whether the Government's relaxation of the air tightness/pressure test requirement making it 30 times less stringent, constitutes an admission that the original specification could not be achieved.

10. Whether the contract requirement that elements of the "roof structure" meet an L/600 deflection requirement applies only to portions of the roof that are structural in nature, and which actually carry loads for transmission to the ground, and therefore does not apply to the panels.

11. Whether the Government's direction that the panels achieve the L/600 requirement constitutes a constructive change to the contract as a result of which AAB was required to perform additional work beyond that required by the contract, entitling it to an equitable adjustment pursuant to FAR 52.243-4 entitled "Changes" for all additional costs, impacts and delays incurred as a result thereof.

12. Assuming the Government is liable under the changes clause for its direction that the panels must achieve the L/600 requirement, what is the monetary value of the equitable adjustment to which plaintiff is entitled?

13. Whether the Government's attempts to require M-20 bolts and untimely relief from such erroneous interpretation, combined with simultaneous demand that plaintiff perform testing to prove the panels met the L/600 requirement, caused AAB to perform additional work beyond that required by the contract, entitling it to an equitable adjustment pursuant to FAR 52.243-4 entitled "Changes" for all additional costs, impacts and delays incurred as a result thereof.

Defendant states that, in addition to the above-stated issues, the factual and legal issues are as follows:

1. Whether the Court possesses jurisdiction to entertain the claim concerning the Government's alleged attempts to require M-20 bolts.

1. Whether AAB agreed, in a December 13, 2001 design issues meeting and by signing bilateral Modification P00009, that the L/600 maximum deflection requirement applied to all roof structure elements including insulated panels.

3. Whether AAB, by signing Modification P00009, waived the claim it now asserts in connection with the L/600 maximum deflection requirement.

4. Whether Modification P00009 constitutes an accord and satisfaction with respect to the claim AAB now asserts in connection with the L/600 maximum deflection requirement.

5. Whether AAB stopped all insulated panel installation in December 2003, and subsequently removed all installed panels from all structures and replaced them with panels from a different manufacturer, as a result of defects (peeling paint) found in the panels that had been delivered prior to that date.

6. Whether, in the absence of the delays attributed by AAB to the pressure test requirement and the L/600 maximum deflection requirement, AAB would have incurred additional costs and experienced additional delays, because it would have installed more defective panels by December 2003, and, therefore, would have more defective panels to remove.

7. Whether and to what extent delays attributed by AAB to the pressure test requirement and the L/600 maximum deflection requirement would have occurred in the absence

of these requirements, as a result of the replacement of installed panels due to defective manufacturing (paint peeling); AAB's inability to utilize third country national labor and/or a rejection of the alternate paint systems proposed by AAB, as alleged by AAB in No. 05-114C.

8. Whether and to what extent delays attributed by AAB to the pressure test requirement and the L/600 maximum deflection requirement would have occurred in the absence of these requirements, as a result of a contractual dispute between AAB and its panel installation subcontractor, Izopoli/BP, which resulted in the termination of Izopoli/BP's subcontract .

9. Whether and when AAB performed a pressure test on a completed, sealed building.

10. Whether the requirements for dehumidifier sizing based upon a 7% infiltration rate contradict the pressure test requirements for a tightly sealed building envelope.

11. Whether all productive work was effectively stopped on the project during the period in question.

12. Whether construction of the pilot DSB was the project's critical path throughout the period in question.

13. Whether delays encountered by the contractor in completing the construction of the initial DSB are attributable, in whole or in part, to causes other than AAB's difficulties in meeting the testing criteria of which it complains.

i. <u>Likelihood of Settlement and Alternative Dispute Resolution</u>: Plaintiff believes that settlement of this dispute is possible and is receptive to using Alternative Dispute Resolution to accomplish the same. Plaintiff believes that either mediation or court appointed expert/neutral fact finder, conducted by a person with appropriate technical background, may be viable. Utilization of a settlement judge may also be a viable approach. The possibility of settlement

would be enhanced by establishing an agreed upon ADR framework which globally addresses all pending matters pertaining to the contract. Finally, over a year has transpired since AAB filed its initial appeal pertaining to this contract. During that time substantial document discovery has been undertaken by the parties, both in anticipation of this case as well as other related cases. Plaintiff urges the Court to take a proactive stance with respect to ADR and believes that the time is now ripe for ADR to commence.

Defendant is amenable to ADR, but believes that some fact discovery will be required before ADR can be helpful. Defendant further notes that, although substantial document discovery has been undertaken by the parties in connection with Nos. 04-1792C, 04-1719C, and 05-114C, and some of the documents produced are also relevant to this case, no discovery has yet been conducted specifically with respect to the issues in this case.

j. See Joint Proposed Scheduling Plan below.

Pursuant to paragraph 5 of Appendix A, the parties propose the following scheduling plan:

i. The parties do not anticipate joining any additional parties to this lawsuit.

ii. Discovery Plan:

1. The parties will exchange their initial production of documents and information within the next 14 days.

2. The parties do not believe that a dispositive motion may be filed after conducting limited discovery on a particular issue.

3. The parties do not believe that discovery should be conducted in phases or limited to certain issues.

4. The parties propose a fact discovery completion date of December 15, 2006. This will allow sufficient time given the fact that most of the witnesses and documents involved are in Israel and fact discovery will involve substantial travel, scheduling and logistical challenges. Also, discovery is in progress in the other pending AAB cases and substantial time is required to efficiently complete discovery in those cases.

5. The parties propose 2:00 p.m. on any three consecutive dates at least 17 days after the close of fact discovery for a status conference.

6. Motion for Summary Judgment:

a. The parties have not yet determined whether or when a motion for summary judgment would be filed, nor have they yet determined whether or to what extent discovery would be necessary or useful to support such a motion.

7. The parties propose that the identity of expert witnesses and their reports be made as follows: (1) February 15, 2007—Plaintiff's expert(s); (2) March 15, 2007—Defendant's expert(s); and (3) March 29, 2007—Plaintiff's expert(s) rebuttal.

8. The parties propose that all expert discovery, including depositions, will be concluded by May 17, 2007.

9. The parties believe that the presumptive limits of five depositions per side and 25 interrogatories per individual party should not apply to this case.

10. No physical or mental examinations of the parties will be required.

11. The parties believe that all discovery should be complete by May 17, 2007.

iii. The parties believe that the case should reasonably be expected to be ready for trial 90 days after the completion of all discovery.

iv. The parties estimate that the trial of this case will require five to seven days, assuming that it is not consolidated with any of the other case.

v. Depending upon the availability and location of witnesses, the trial could be held in either Washington, D.C. or Tel Aviv, Israel. The parties believe that this and all related cases should be tried in Washington, D.C., and that doing so would both increase judicial efficiency and result in significant cost savings. The parties note that it appears that any trial pertaining to this contract will occur substantially after the completion of the contract work. Some of the witnesses who are presently located in Israel because of responsibilities relating to the contract may no longer be located there at the time of trial.

k. At this time the parties are aware of no special issues regarding electronic case management needs. The manner of translation of documents from Hebrew to English has already been resolved between the parties in connection with the other pending cases.

l. Plaintiff may file an amended complaint if permitted to do so under RCFC 15(a). The amended complaint would reflect various adjustments to the damages claimed by plaintiff.

. The parties have held the early meeting of counsel on February 22, 2006, and will exchange the lists and other disclosures set out in RCFC 26(a)(1) and Appendix A ¶ 3 within the next 14 days. The parties have also hereby provided an estimate of the anticipated litigation costs, (1) through the end of discovery; (2) by the end of trial; and (3) through appeal, and certify that each respective estimate of time and cost was provided to each respective party.

Plaintiff estimates that its costs through discovery in this case will be $150,000, $250,000 through the end of trial and $300,000 through appeal.

Defendant estimates that its costs through discovery, the end of trial and through appeal will be approximately the same as those estimated by plaintiff.

m. The parties propose 10:00 a.m. on March 7, 8, or 9, 2006, for a status conference with the Court.

Respectfully submitted,

Bell, Boyd & Lloyd PLLC

**s/** Brian Cohen
___________________________
Brian Cohen, Esq.
Bell, Boyd & Lloyd PLLC
1615 L Street, N.W.
Suite 1200
Washington, DC
(202) 955-6823 (phone)
(202) 835-4130 (fax)

*Attorneys for Plaintiff*

Dated: February 24, 2006

**Filed Electronically**
**With the consent of the**
**Attorney for Plaintiff**

PETER D. KEISLER
Assistant Attorney General

**s/** David M. Cohen
___________________________
DAVID M. COHEN
Director

**s/** Shalom Brilliant
__________________________
SHALOM BRILLIANT
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
Room 8012
Washington, D.C. 20530
Telephone: (202) 305-7561
Facsimile: (202) 305-7643

*Attorneys for Defendant*

Dated: February 24, 2006